STATE v. RHODES.

1. MOTION FOR NEW TRIAL ON THE GROUND OF AFTER-DISCOVERED EVIDENCE should be scrutinized with great caution, and will be refused where the new evidence relied on is the statement of a young and ignorant colored girl, made after the trial, that her testimony at the trial was false, and that improper means had been used to induce her so to testify.

2. EXCEPTIONS—APPELLANT.—On appeal by one of three defendants in a criminal case, the appellant cannot be heard on exceptions which affect only the two defendants not appealing.

3. CROSS-EXAMINATION.—In the cross-examination of a witness, he may be asked whether he had not obtained liquor while on defendant's premises on that day, which was Sunday, in order to test the witness' condition for identifying persons as to whose presence he had testified, and such inquiry will not be construed as an effort on the part of counsel to prejudice the jury against the defendant because of his selling liquor on Sunday.

4. CHARGING JURIES—OUTSIDE PRESSURE.—There was no error in charging the jury, "You are kings in your capacity, and mortal man cannot touch your judgment," the context showing that the judge was guarding the jury against outside pressure and not suggesting it to them.

5. MOTION FOR NEW TRIAL—APPEAL.—This court cannot review the determination of the Circuit Judge in refusing a motion for new trial, unless he thereby commits some error of law; and he does not commit error of law in declining to put his judgment against that of the jury as to the credibility of the witnesses.

6. CHARGING JURIES—ALIBI.—There was no error in charging the jury that "something has been said about an alibi; now an alibi is a dangerous defence, &c.," as the charge clearly explained to the jury what an alibi was; and, moreover, while alibi was not pleaded or relied on as a defence, there was some testimony as to defendant's not having left home on an occasion when he was charged by a witness to have gone towards the gin house which was afterwards burned, and for the burning of which he was being tried.

Before BUCHANAN, J., Anderson, February, 1895.

Indictment against Jasper N. Rhodes and others, for the burning of a gin house, on November 18, 1894; and from a conviction and sentence, Rhodes alone appealed. Before hearing had of the appeal, appellant moved to suspend the appeal, with leave to apply on circuit for a new trial on the ground of after-discovered evidence, such evidence being the affidavit of a witness, a colored girl, that her testimony at the trial was false, and had been procured from her by persons interested in the prosecution, and affidavits showing that this witness had been kept before the trial out of reach of defendant and his counsel. This motion was refused by the following order, passed May 6, 1895,

PER CURIAM. This is a motion to suspend the appeal now

pending in this court, in order to enable the appellant to move before the Circuit Court to grant him a new trial upon the ground of after-discovered evidence. The principles which govern this court in disposing of this motion have been so often stated in recent cases that it surely cannot be necessary to repeat them here. It is sufficient to now say that a careful examination of the affidavits submitted in support of the motion fails to disclose any ground which would justify this court in granting the motion. We, however, avail ourselves of this opportunity to say that the universally recognized doctrine is, that applications of this kind should be scrutinized with great caution, in order to avoid delays and prevent any obstructions to the administration of justice. As was said by the late Chief Justice Simpson in the case of *State* v. *David*, 14 S. C., at page 432: "There can be no doubt that motions of this sort should be received with the utmost caution, because, as it is said by a learned judge, there are but few cases tried in which something new may not be hunted up, and also because it tends to perjury; and as was said in the case of *State* v. *Harding*, 2 Bay, 268, it would have a mischievous tendency, after all the evidence on the part of the State had been fully disclosed, to allow one with his life in danger an opportunity, by the assistance of confederates, to procure unprincipled witnesses to contradict the evidence on the part of the State, and thereby defeat the ends of justice."

Now in this case the motion is based upon the allegation, supported by affidavits, that since the trial a statement has been obtained from an ignorant colored girl, about the age of seventeen years, who had been bound by her mother to the appellant, and who was the witness principally relied upon by the State at the trial, to the effect that her testimony on the trial was false, and that improper means had been used to induce her to so testify. When it is remembered how easy it would be, in many cases, by working upon the fears or exciting the hopes of persons of the class to which this witness belongs, to obtain such promises of new testimony, as is relied upon in this case, it must be obvious to every person of experience and observation, that it would be dangerous to the administration

of justice, to allow such a showing as is here made to operate as a sufficient ground for granting a new trial, as it would tend to encourage efforts to tamper with witnesses, and thus open the door to perjury. Of course, we must not be understood as even intimating that any of the counsel in the case had anything whatever to do with obtaining the statement above referred to, as there is not the slightest evidence to that effect; and, besides, the well known character of the counsel would be amply sufficient to repel any suspicion even that they had acted improperly in the matter.

It is ordered, that the motion to suspend the appeal, for the purpose of enabling the appellant to move before the Circuit Court for a new trial upon the ground of after-discovered evidence, be refused.

*Messrs. Bonham & Watkins* and *Tribble & Prince,* for appellant.

*Mr. Ansel,* solicitor, contra.

June 26, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The three defendants above named were indicted and tried jointly under a charge of arson, in burning the gin house of one James P. Johnson, and upon their trial they were all convicted and recommended to the mercy of the court. After the verdict was rendered, the defendant, Rhodes, moved for a new trial upon the minutes of the court, which motion was refused, and the defendant, Rhodes, was sentenced to imprisonment in the State penitentiary at hard labor, for the term of twelve years. From this judgment the defendant, Jasper N. Rhodes, alone appeals, on the several grounds set out in the record; the other two defendants not appealing.

The first and second grounds of appeal, relating only to the confessions made by Lee Owens and John Murphy, in which the name of the appellant, Rhodes, was not even mentioned, are manifestly inapplicable to the questions raised by this appeal, and need not, therefore, be considered.

The third ground of appeal is as follows: "Because his honor erred in allowing the solicitor, against objection by defendant's

attorneys, to ask the defendant's witness, A. W. Grant, if he had not obtained whiskey or liquor at Rhodes' on Sunday; the manifest object being to prejudice defendant, Rhodes, in the eyes of the jury; and said question being wholly irrelevant to the issue being tried." For a proper understanding of this exception, it is necessary to state that the evidence tended to show that several persons, both white and colored, were at the house of the appellant on Sunday afternoon—on the night of which day the gin house was burned—amongst whom was the witness Grant, and when he was asked by the solicitor, on the cross-examination, whether the other two defendants were among the colored people present, he replied: "I don't know, sir; you know darkeys are so much alike, I don't know that I would know them. Q. Have you ever seen two people that looked just exactly alike? A. Yes, sir. Q. You have seen two people that looked exactly alike? A. Yes, sir. Q. You are certain of that? A. Yes, sir, I am. Q. Did you see any liquor there that evening? A. No, sir. Q. You didn't get any of it? A. No, sir, I did not; I don't fool with that." At this point the objection of counsel was interposed, and though the objection was overruled, no further question was asked about liquor.

How this testimony can be construed (not to use a stronger term) into an effort on the part of the solicitor to convey the idea to the jury that appellant was selling liquor on Sunday, which, judging from the argument of counsel for appellant, constitutes the *gravamen* of the objection, it is impossible to conceive, and the suggestion of any such purpose is based solely upon the purest conjecture. The witness was not asked if he got any liquor from appellant, and as there were several other persons present, there was not the slightest reason to assume that the intention was to show that the witness got any liquor from appellant, or even that he had any; though another of defendant's witnesses was permitted to say, without objection, that he and the appellant did go out of the house and got a drink. It is very obvious that the sole purpose of the testimony, which constitutes a basis of this ground of appeal, was to ascertain whether the witness Grant was unable to identify

the "darkeys" of whom he spoke, because of his being "in liquor." It is clear, therefore, that there is nothing in the third ground of appeal; for, even if the testimony in question was irrelevant to the issue on trial, it certainly was within the limits allowed on cross-examination to test the correctness of the testimony of the witness.

The fourth ground of appeal is presented in the following language: "Because his honor erred in charging the jury as follows: 'You are kings in your capacity, and mortal man cannot touch your judgment.' It being apparent, even from his honor's charge, that prejudice and feeling existed in the case against the defendants, and that 'outside pressure' was being used, if any of the jurors were influenced by such considerations, the effect of these words, uttered by the presiding judge, would be to confirm them in their determination to convict the defendant, regardless of law or evidence." It seems to us that this ground of appeal is based upon two wholly gratuitous assumptions, unsustained by any evidence whatever: 1st. That "outside pressure" was being brought to bear to induce the jury to find the defendants guilty. 2d. That the jurors, or some of them at least, would yield to such outside pressure; and this involves a grave imputation against jurors which this court would be slow to endorse. But, more than this, when the whole passage from which the words quoted in this ground of appeal are taken, is read together, it is very obvious that the sole purpose of the language quoted from the judge's charge, was to fortify the jury against the effect of any outside pressure (if any there was), and to impress upon their minds their duty to decide the case according to the testimony as adduced on the stand, without regard to any other consideration. Here is the whole passage: "Now, gentlemen, you are to consider yourselves set apart solely for the purpose of considering what you hear in this court house, seeing what you see here, and you are not to pay any attention to outside pressure; you must be oblivious to any outside pressure; you are kings in your capacity, and mortal man cannot touch your judgment. You are to be the sole judges, you are to listen to nothing that goes on on the outside, your ears are to be deaf

and your eyes blind to all except what happens here on this witness stand; your duty is to inquire as to the guilt or innocence of these parties, as to what happens here in the court house, right here on the stand." It is manifest, therefore, that the fourth ground of appeal cannot be sustained. .

The fifth ground reads as follows: "Because his honor erred in not granting a new trial to this appellant, because it appears from the record that the verdict is against the manifest weight of the evidence, and against the law as it was given to the jury by the court. Because it is shown by the record of the evidence that, eliminating the so-called confessions of the alleged accomplices, the only testimony against this appellant, Rhodes, was the testimony of the little negro girl, Mary Williams, which was contradictory on its face, and which was contradicted point blank by the testimony of four adult, intelligent white witnesses." It seems to us that the very terms in which this ground of appeal is couched, sufficiently show that it cannot be sustained by this court. For it is abundantly apparent that the whole question turned upon the credibility of the witness, Mary Williams; and that is a question peculiarly and exclusively within the province of the jury. Whether the jury have correctly solved that question, it is certainly beyond the province of this court to inquire. Ever since the case of *State* v. *Cardoza,* 11 S. C., 195, followed by numerous other cases, it has been uniformly held, that this court has no power to set aside a verdict of a jury in a criminal case, on the ground that the verdict was against the evidence, or unsupported by it. That power has been lodged exclusively in the Circuit Court, and its decision, so long as no error of law is committed by it, is final and conclusive. We are unable to discover that his honor, Judge Buchanan, committed any error of law, in refusing the motion for a new trial. He did not refuse the motion for want of power to grant it, as in the case of *State* v. *David,* 14 S. C., 428, and in *Wood* v. *Railway Co.,* 19 S. C., 579, which would have been error of law; but the motion was refused, as appears from the record, because the Circuit Judge was not disposed to put his judgment against that of the jury. Now, reading that remark in the light of the circum-

stances of the case, it is very obvious that the Circuit Judge, seeing that the whole question was one of credibility of testimony—a question peculiarly within the province of the jury— he was disposed to respect the judgment of the jury upon that question; and in this, there certainly was no error of law.

The only remaining ground of appeal is the sixth, which reads as follows: "Because his honor erred in charging the jury as follows: 'Now, gentlemen, something has been said here about an *alibi*. The books say an *alibi* is a dangerous defence,' &c. The error consisting in this: that the defendant had made no effort to set up an *alibi*, but on the contrary proved by his own witnesses that he was at the very place at the very hour charged by this girl, but that no such conversation as she alleges to have heard between him and Lee Owens and John Murphy took place, or could have taken place, without their knowledge. But by the judge's charge as to an effort to prove an *alibi*, the jury were misled into believing that this was only an attempt to prove an *alibi*." It will be observed that the Circuit Judge did not say that the appellant had set up an *alibi* as a defence, and did not even say that he had attempted to prove an *alibi*; but what he did say was: "Something has been said here about an *alibi*. The books say that an *alibi* is a dangerous defence, yet when there are no circumstances showing any lack of completion in the chain, it is as complete a defence as can be devised, because the law says a man cannot be in two places at one and the same time, and we all know that. He cannot be in Anderson and in Abbeville the same day," at precisely the same time. This was all that was said on the subject; and how this can have misled the jury it is impossible for us to conceive. The fact that something was said about an *alibi*, by whom or for what purpose does not appear, certainly could not have had any effect in misleading the jury. But when we look into the testimony, the reason for making this remark is apparent, for it there appears that Mary Williams, a witness for the State, had testified that after hearing Rhodes, the appellant, tell the other two defendants that if they would burn the gin house, he would furnish the matches and the oil, these three persons—Rhodes, Owens and Murphy—left the house and went down towards the

stable, in the direction of the gin house, after which defendants offered several witnesses to prove that Rhodes, the appellant, never left the house that evening; and this is probably what gave rise to the remark about the *alibi.* We do not think, therefore, that the sixth ground of appeal can be sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.